IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACALYN C. T., ) | |
| ) | |
| Plaintiff, ) | Case No. 1:22-cv-3125 |
| v. ) | |
| ) | Magistrate Judge Jeannice W. Appenteng |
| MICHELLE KING, Acting ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jacalyn C. T. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and plaintiff filed a brief explaining why the Commissioner's decision should be reversed or the case remanded. The Commissioner responded with a competing motion for summary judgment in support of affirming the decision. After review of the record and the parties' respective arguments, the Court grants the Commissioner's motion.

**BACKGROUND**

Plaintiff protectively applied for SSI and DIB benefits on January 20 and 21, 2020, respectively, alleging disability since September 30, 2019 due to respiratory

---

[1] Michelle King became the Acting Commissioner of Social Security on January 20, 2025. She is automatically substituted as the named defendant pursuant to FED. R. CIV. P. 25(d).

problems, asthma, sciatica, hypertension, a bulging disc in the back, hearing loss, and depression. Administrative Record ("R.") 340-45, 390. Born in February 1979, plaintiff was 40 years old as of the alleged onset date, making her a younger person (under age 50). 20 C.F.R. § 404.1563(c); 20 C.F.R. § 416.963(c). R. 340. Plaintiff lives with her young children and has past relevant work as a retail cashier and school bus monitor. R. 45, 46, 391. She stopped working in September 2019 due to her conditions and has not engaged in substantial gainful activity since that date.

The Social Security Administration denied plaintiff's applications initially on August 20, 2020, and upon reconsideration on November 10, 2020. R. 89-158. Following a March 4, 2021 hearing, an administrative law judge ("ALJ") issued an unfavorable decision. R. 62-88, 162-75. On August 10, 2021, the Appeals Council remanded the case to the ALJ for further consideration of plaintiff's mental impairments and maximum residual functional capacity ("RFC"). R. 181-82. The ALJ held a supplemental hearing on November 19, 2021 and heard testimony from plaintiff, who was represented by counsel, and from vocational expert Sara Elizabeth Gibson (the "VE").[2] R. 38-61. On October 1, 2020, the ALJ found that plaintiff's lumbar spondylolisthesis, obesity, osteoarthritis of the sacroiliac joint, asthma, hearing loss, depression, anxiety, and learning disorder are all severe impairments, but that they do not alone or in combination with plaintiff's non-severe impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15-18.

---

[2] The hearing was held telephonically due to the COVID-19 pandemic.

After reviewing the evidence, the ALJ concluded that plaintiff has the RFC to perform light work with various environmental and non-exertional limitations. R. 18-24. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could not perform plaintiff's past work as a cashier or bus monitor, but could perform a significant number of other jobs available in the national economy, such as cleaner, counter clerk, and sorter. R. 24-26. As a result, the ALJ concluded that plaintiff was not disabled at any time from the alleged disability onset date through the date of the decision. R. 26. The Appeals Council denied plaintiff's request for review on April 25, 2022. R. 1-5. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of her request for reversal or remand, plaintiff argues that the ALJ's mental and physical RFC determinations do not account for all of her limitations, and that the ALJ erred in discrediting her subjective statements regarding her symptoms.[3] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

---

[3] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

**DISCUSSION**

A.  **Standard of Review**

A claimant is disabled within the meaning of the Social Security Act if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[4] 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether [the claimant] has a severe impairment or a combination of impairments that is severe; (3) whether [the claimant's] impairments meet or equal any impairments listed as conclusively disabling; (4) whether [the claimant] can perform . . . past work; and (5) whether [the claimant] is capable of performing any work in the national economy." *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)-(g)). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Id.*

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus*, 994 F.3d at 900). Substantial evidence is "such relevant evidence as a reasonable mind

---

[4] Because the regulations governing DIB and SSI are substantially identical, for ease of reference, only the DIB regulations are cited herein.

4

might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand terms," an ALJ must build a "logical bridge from the evidence to his conclusion"); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**B.    Analysis**

    **1.    Mental RFC**

Plaintiff argues that the case must be reversed or remanded because the ALJ made several errors in assessing her mental RFC. Dkt. 15 at 6-10; Dkt. 19 at 2-6.[5] A claimant's RFC is the maximum work that she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 C 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

---

[5] This opinion cites to the CM/ECF number at the top of the page.

The ALJ found that despite plaintiff's moderate limitations in understanding, remembering, or applying information, and in concentrating, persisting, or maintaining pace, she can: "remember work-like procedures, follow instructions, and maintain adequate pace, persistence, and concentration to complete one- to two-step tasks, and complete a normal workday without interruptions from psychologically-based symptoms, consistent with jobs with a Specific Vocational Preparation (SVP) of 1 or 2." R. 16-18. This largely mirrors the opinions from state agency reviewers Gayle Williamson, Psy.D., and Nicole Robicheau, Psy.D., who both concluded that plaintiff can "remember work-like procedures, follow instructions, maintain adequate pace, persistence and concentration to complete 1-2 step tasks and complete a normal workday without interruptions from psychologically based symptoms," and has "no limitations in the social domain." R. 99, 112, 133, 153. Plaintiff does not identify any physician of record who found her more limited. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023) ("The lack of an opposing medical opinion [imposing greater restrictions than those the ALJ found in his decision] makes it difficult for us to find that the ALJ misjudged the evidence so significantly as to warrant reversal").

In the absence of any opinion suggesting greater mental limitations, plaintiff offers a string of flimsy challenges to the ALJ's decision. For example, she argues that she cannot "stick[ ] with a job due to her slow pace," and says the ALJ failed to account for this specific deficit. Dkt. 15 at 7; Dkt. 19 at 2-3. To the contrary, the ALJ adopted the uncontroverted opinions from Drs. Williamson and Robicheau that

6

plaintiff can maintain adequate *concentration*, *persistence* and *pace* to complete 1-2 step tasks throughout a normal workday. R. 24, 99, 112, 133, 153. *See Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (ALJ reasonably relied on consultants' narrative RFC assessments); *Melissa M. v. Saul,* No. 19 C 745, 2020 WL 207715, at *5 (N.D. Ill. Jan. 14, 2020) (ALJ properly relied on opinion of medical expert who translated moderate limitations in concentration, persistence, and pace into a specific RFC).

    Plaintiff disagrees, stressing that the ALJ asked the VE a hypothetical question about a person needing frequent redirection after a job's 30-day learning period. R. 58-59. In plaintiff's view, by asking about redirection, the ALJ obligated herself to include that limitation in the RFC. Dkt. 15 at 7-8; Dkt. 19 at 4-5. This argument is unpersuasive because "the fact that the ALJ 'consider[ed] adding a mental limitation to an RFC does not establish that such a limitation is ultimately warranted. In fact, it is not reversible error where the hypothetical question posed to the VE was more restrictive than the limitations the ALJ ultimately assigned to the claimant.'" *Manuel C. v. O'Malley*, No. 20 C 5525, 2024 WL 916226, at *12 (N.D. Ill. Mar. 4, 2024) (quoting *Kathleen C. v. Saul*, No. 19 C 1564, 2020 WL 2219047, at *6 (N.D. Ill. May 7, 2020)). *See also Heather S. v. O'Malley*, No. 22 C 1432, 2024 WL 2088178, at *4 (N.D. Ill. May 9, 2024) (rejecting similar argument that "has no basis in law and . . . ignores the reality that, when posing various hypotheticals to the VE, the ALJ may not yet know what a claimant's RFC is") (internal quotations omitted). Here, no physician opined that plaintiff needs any redirection, much less frequent

redirection. *Cf. Dennis S. v. Kijakazi*, No. 19 C 2245, 2022 WL 425715, at *7 (N.D. Ill. Feb. 10, 2022) (where physician opined that plaintiff would be off-task, ALJ erred in failing to mention that restriction or explain why she disregarded it). And as the ALJ noted, plaintiff testified that she is generally able to complete tasks and focus sufficiently to read books, crochet, watch movies, and prepare meals. R. 17.

Plaintiff cites other evidence she says supports her claimed need for frequent redirection, such as her borderline intelligence and her testimony/reports to physicians that: she does not handle stress well; called off work "at times"; had low energy; had passive suicidal thoughts when really overwhelmed; and was told by employers that she worked "too slow." Dkt. 15 at 8; Dkt. 19 at 5 (citing R. 93, 420, 673, 677, 723, 747, 862, 866, 874). But the ALJ considered these issues, R. 22-24, and this Court will not reweigh evidence or substitute its judgment for the ALJ's determination. *Warnell*, 97 F.4th at 1052-53.

Plaintiff next takes issue with the jobs the ALJ said she can perform at step five of the sequential analysis. The ALJ accepted the VE's testimony that a person with plaintiff's background and stated mental RFC can work as a cleaner (DOT # 323.687-014), sorter (DOT # 222.687-022), and counter clerk (DOT # 295.357-018). R. 25-26, 57. Plaintiff insists that she is incapable of the sorter and counter clerk jobs because they have reasoning levels of 2 and 3, respectively, and the restriction to 1-2 step tasks means she can only do jobs with a reasoning level of 1. Dkt. 15 at 9-10; Dkt. 19 at 5-6. The Court agrees. "One- to two-step tasks function as a term of art in the Social Security context: the Department of Labor's Dictionary of

8

Occupational Titles ('DOT') defines a Reasoning Development Level of 1 as the ability to '[a]pply commonsense understanding to carry out simple one- or two-step instructions.'" *Deborah B. v. Kijakazi*, No. 20 C 7729, 2022 WL 1292249, at *2 (N.D. Ill. Apr. 29, 2022) (quoting *Schlattman v. Colvin*, No. 12 C 10422, 2014 WL 185009, at *7 (N.D. Ill. Jan. 14, 2014)). "Accordingly, a limitation to one or two step work restricts the person to a Level 1 Reasoning job under the DOT." *Id*. Since the sorter and counter clerk positions require more than a reasoning level of 1, they are not available to plaintiff.

Regardless, remand is not required because the error was harmless. The Seventh Circuit has "repeatedly emphasized that 'the harmless error standard applies to judicial review of administrative decisions, and we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.'" *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (quoting *Butler v. Kijakazi,* 4 F.4th 498, 504 (7th Cir. 2021)). The cleaner job has a reasoning level of 1 and so is within plaintiff's functional abilities. And the VE testified that there are 193,000 such positions available in the national economy. R. 57. This easily qualifies as a "significant" number for purposes of the step five analysis. *See Milhem v. Kijakazi*, 52 F.4th 688, 696-97 (7th Cir. 2022) (89,000 national jobs was "significant").[6]

---

[6] Contrary to plaintiff's assertion, *Herron v. Shalala*, 19 F.3d 329 (7th Cir. 1994), does not stand for the proposition that job numbers are not significant if there is "only one type or category of job . . . available to the claimant." Dkt. 15 at 9; Dkt. 19 at 5-6. The question of significance turns on the total number of jobs available. *Milhem*, 52 F.4th at 696-97.

9

Viewing the record as a whole, the ALJ did not commit reversible error in determining plaintiff's mental RFC, and her request to remand the case for further consideration of this issue is denied.

### 2. Physical RFC

Plaintiff argues that the case still requires remand because the physical RFC fails to account for all of her limitations. The ALJ found that plaintiff can perform light work in an environment with a noise intensity level of 1, 2, or 3, and no concentrated exposure to respiratory irritants, loud machinery, or unprotected heights. R. 18, 24. This RFC follows, and is even slightly more restrictive than, the opinions from state agency reviewers Richard Bilinsky, M.D., and Lisa Green-Hill, D.O., who did not include any noise restrictions. R. 96-97, 109-11, 128-30, 148-50.

Plaintiff argues that she requires additional limitations, including a need to regularly change positions, a need to nap, and accommodations for obesity. Dkt. 15 at 10-13; Dkt. 19 at 6-10. This argument fails because once again, no physician of record indicated that plaintiff has greater limitations than those set forth by the ALJ. *Tutwiler*, 87 F.4th at 860. Plaintiff suggests that records showing right knee joint effusion, diminished range of motion in the lumbar spine, grade two spondylolisthesis with lordosis and bilateral spondylolysis, stenosis/osteoarthritis of the lumbar spine, and osteoarthritis of the sacroiliac joints establish a need to regularly change positions. Dkt. 15 at 10; Dkt. 19 at 6-7 (citing R. 93, 454-55, 607, 719, 784, 794). But the ALJ considered that evidence, along with plaintiff's testimony about alternating positions, and reasonably relied on the opinions from

10

the state agency physicians (who also reviewed the cited medical evidence). R. 19, 21, 93, 106, 122-23, 142-43. *See Warnell*, 97 F.4th at 1052-53 (the Court will not reweigh evidence or substitute its judgment for the ALJ's determination).

For similar reasons, there is no merit to plaintiff's assertion that the RFC should have reflected that she needs to nap. Dkt. 15 at 11-12; Dkt. 19 at 7-8. Again, the ALJ expressly acknowledged plaintiff's testimony about napping "once or twice a week" when "feeling overwhelmed," R. 23-24, 52, and reasonably found it lacking in any medical support. Indeed, plaintiff does not identify a single physician who indicated she would need to nap during the day. *Imse v. Berryhill*, 752 F. Appx. 358, 360-62 (7th Cir. 2018) (ALJ properly disregarded claimant's hearing testimony of needing to lie down or nap 90 minutes to 4 hours a day 2 to 5 days a week, where "no physician, treating or otherwise, has ever indicated that there was a medical reason why she would need to lay down/nap as frequently as alleged during the day").

As for plaintiff's obesity, the ALJ considered the impairment at multiple steps of the sequential analysis and fashioned the RFC to take into account the combined effects of all plaintiff's impairments. R. 15-16, 21. Plaintiff may believe that she has greater limitations stemming from obesity, Dkt. 15 at 12-13; Dkt. 19 at 8-10, but she does not cite any physician of record who agreed.[7] *Brumbaugh v. Saul*, 850 F. Appx. 973, 976 (7th Cir. 2021) (affirming where the ALJ acknowledged plaintiff's obesity and plaintiff merely speculated that it caused additional

---

[7] Drs. Bilinsky and Green-Hill did not identify obesity as a severe impairment but both were aware that her BMI was 35.1, well in the obese range. R. 89, 102, 117, 137.

11

functional limitations); *Lynida W. v. Saul*, No. 19 C 2021, 2020 WL 2542156, at *4 (N.D. Ill. May 19, 2020) (quoting *Shumaker v Colvin*, 632 F. Appx. 861, 867 (7th Cir. 2015)) (ALJ properly considered the plaintiff's obesity where the plaintiff "does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ, and neither does she explain how her obesity exacerbated her underlying impairments").

Viewing the record as a whole, the ALJ did not commit any reversible errors in determining that plaintiff has an RFC for light work with certain environmental restrictions. The ALJ's decision is supported by substantial evidence and does not provide a basis for remand. *See Salvador H. v. Kijakazi*, No. 22 C 7254, 2023 WL 5017944, at *5 (N.D. Ill. Aug. 7, 2023) (citing *Biestek*, 139 S. Ct. at 1154) ("The 'substantial evidence' standard is not a high hurdle to negotiate").

### 3. Subjective Symptom Evaluation

Plaintiff finally argues that the ALJ erred in assessing her subjective statements regarding her symptoms. Dkt. 15 at 13-16; Dkt. 19 at 10-13. In evaluating a claimant's subjective symptom allegations, an ALJ must consider several factors including: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication; treatment and other measures besides medication taken to relieve pain or other symptoms; and functional limitations due to pain or other symptoms. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8

(Oct. 25, 2017). "'An ALJ need not discuss every detail in the record as it relates to every factor,' but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Benito M. v. Kijakazi*, No. 20 C 5966, 2022 WL 2828741, at *8 (N.D. Ill. July 20, 2022) (quoting *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022)). "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts*, 27 F.4th at 1279; *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th at 1278.

Plaintiff's first objection is that the ALJ improperly found her capable of full-time work based on her ability to perform various activities of daily living. Dkt. 15 at 13-14; Dkt. 19 at 10-12 (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer"). Plaintiff is mistaken. To begin, "it is entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of h[er] impairments was credible or exaggerated." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016).

13

In addition, the ALJ did not state that plaintiff's activities prove she can work full-time. The ALJ merely noted that plaintiff was able to engage in more robust activities than would be expected for a person with her claimed mental and physical limitations. R. 17, 19 (noting that plaintiff was capable of: maintaining a social life, getting along well with others, talking to family daily on the phone, caring for children, running errands, attending appointments, transporting children, cleaning the house, doing laundry and dishes, preparing daily meals, and shopping). This was entirely proper. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. Apr. 5, 2019) ("ALJ did not equate Burmester's ability to perform certain activities of daily living with an ability to work full time. Instead, he used her reported activities to assess the credibility of her statements concerning the intensity, persistence, or limiting effects of her symptoms consistent with the applicable rules").

Plaintiff next argues that the ALJ committed reversible error by noting that she was able to work "part-time 20-30 hours per week in a stocking position until after the initial hearing" in March 2021. R. 19, 20, 24; Dkt. 15 at 15; Dkt. 19 at 12. But an "ALJ is entitled to consider Plaintiff's part-time work after her alleged onset date." *Dorothy B. v. Berryhill*, No. 18 C 50017, 2019 WL 2325998, at *4 (N.D. Ill. May 31, 2019) (citing *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). And here, the ALJ did not equate plaintiff's ability to work part-time with an ability to work full-time but simply identified it as a factor weighing against her credibility. *Maxwell v. Berryhill*, No. 16 C 6101, 2017 WL 4180340, at *7 (N.D. Ill. Sept. 21,

2017) ("It is proper for an ALJ to find that a claimant's ability to perform part-time work during an alleged period of disability can curtail her credibility"). *Cf. Lanigan v. Berryhill*, 865 F.3d 558, 565 (7th Cir. 2017) (ALJ improperly drew conclusions about plaintiff's ability to work full-time based on part-time employment).

There is finally no merit to plaintiff's objection that the ALJ should have credited her testimony because she received "serious treatment that includes invasive procedures." Dkt. 15 at 15; Dkt. 19 at 12-13. Plaintiff concedes that the only she treatment she received was facet block injections and medication, which the Seventh Circuit has characterized as conservative measures. *See, e.g., Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) ("Prill's treatment – injections, orthotics, and physical therapy – was conservative"). The fact that plaintiff's physicians prescribed only conservative treatment bolsters the ALJ's conclusion that plaintiff's complaints were not entirely credible. R. 21. *See Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (affirming adverse credibility finding based on the claimant's "relatively conservative" treatment consisting of "various pain medications, several injections, and one physical therapy session").

Viewing the record as a whole, the ALJ's assessment of plaintiff's subjective statements was not "patently wrong." *Grotts*, 27 F.4th at 1279. Plaintiff's request to remand the case for further consideration of this issue is denied.

## CONCLUSION

For the reasons stated above, plaintiff's request to reverse or remand the case is denied, and the Commissioner's motion for summary judgment

15

[17] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

_____
**Jeannice W. Appenteng**
**United States Magistrate Judge**

Dated: 1/24/2025